UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ATLAS LIFTING & RIGGING, LLC,<br><br>    Plaintiff,<br><br>    v.<br><br>TREVOR BERNER and SYNERGY MARKETING AND SALES, INC.,<br><br>    Defendants. | No.  2:23-cv-00808 KJM AC<br><br>FINDINGS AND RECOMMENDATIONS |

This matter is before the court on plaintiff's motion for default judgment as to defendant Synergy Marketing & Sales, Inc.  ECF No. 22.  The motion was referred to the undersigned pursuant to E.D. Cal. R. 302(c)(19), and was taken under submission on the papers.  ECF No. 23.  For the reasons set forth below, the undersigned recommends plaintiff's motion be GRANTED, and that judgment be entered against defendant Synergy in the amount of $706,243.25.  Defendant Berner continues in this case as a defendant in pro se.

**I.   Relevant Background**

Plaintiff Atlas Lifting & Rigging, LLC ("Atlas") is a Nevada limited liability company.  ECF No. 1 at 1.  The sole shareholder of Atlas is Kwok Fai Dennis Wong, a citizen of China, who is not a party to this lawsuit.  Id.  Defendant Trevor Berner is an individual believed to be living in Roseville, California.  Id.  Corporate defendant Synergy Marketing & Sales, Inc. has received materials shipped to Atlas to a store at Synergy's warehouse located at 1644 Auburn

1

1  Blvd, Sacramento, CA 95815.  Id. at 1-2.  The California Secretary of State's website lists
2  Synergy's address as 814 Striker Avenue, Suite B, Sacramento, CA, 95834, with the sole officer
3  being Mr. Berner.  Id. at 2.  Berner's last Statement of Information with director information was
4  filed October 17, 2017.  Id.  The entity went into FTB Suspended status on November 1, 2017.
5  Id.

6     In late 2019, Wong retained Berner, doing business as Synergy, to manage his industrial
7  tool and equipment sales company in the United States.  Id.  As part of the retention agreement,
8  Berner would receive a consulting fee of $10,000 per month, commissions for certain sales
9  activities, and commissions on products warehoused by Synergy.  Id.  Berner was also to be
10 responsible for managing the company's inventory and distribution along with its financial
11 records.  Berner was supposed to keep Wong informed of all this information.  Berner had
12 exclusive control over Atlas's bank account.  Id. at 3.

13     On December 17, 2019, Berner, at the direction of Wong, filed Articles of Organization
14 for Atlas in Nevada.  Id. at 3.  Wong had preliminary discussion with Berner about Berner
15 earning a 10% stake in Atlas if Berner's management of the company led to Atlas being
16 profitable.  Id.  Berner provided the required inventory, distribution, and accounting information
17 and documentation to Wong while serving as Atlas's manger.  Wong could not travel to the
18 United States during the COVID-19 Pandemic.  Id.

19     Berner's complete control over Atlas' revenues, customer data, financial programs, and
20 bank account provided him with the ability to mishandle Atlas's monies.  Id. Atlas believes at the
21 time of filing, Berner had earned approximately $260,500.00 in consulting fees, $15,123.59 in
22 commissions, and via Synergy, $67,498.59 in warehousing commissions for storing Atlas
23 materiel temporarily before final shipment to customers.  Id.  Together, Berner and his company
24 earned $343,122.18.  Id.  Rather than invoicing Atlas for these monies, plaintiff alleges Berner
25 spent Atlas's revenues on personal expenses.  Id.

26     Atlas alleges on information and belief that Berner expended at least $226,666.11 on
27 personal expenses, including motorcycle parts, food, and expenses for Synergy's business,
28 including rent and utilities, and at least an additional $232,302.78 in a manner requiring further

2

explanation and support from Mr. Berner, including $201,423.66 of cash withdrawals. Id. Atlas further alleges that Berner expended at least $628,945.72, in questionable written checks, including $63,000.00 in checks to himself and $559,353.10 in checks to his alter ego, Synergy. Id. at 3-4. Berner has been terminated as a manager and employee of Atlas. Id. at 4. Mr. Wong and Doug Ozolins are now the managers of Atlas. Id. Wong remains the sole member of the limited liability company. Id.

As to all defendants, the complaint alleges Breach of Duty of Loyalty under California Civil Code section 343 and Conversion under Cal. Civ. Code § 3336. Id. at 4-5. Additional causes of action are alleged against Berner only. Id. at 6-7. In the complaint, plaintiff seeks judgment against Berner and Synergy in the amount of $1,087,914.61 in misappropriated funds, plus interests, as well as consequential damages and attorneys' fees and costs. Id. at 9.

Berner appeared in this case in pro se on July 10, 2023, by filing an answer on a complaint form and making counterclaims. ECF No. 6. Plaintiff moved to strike the answer and dismiss the counterclaims. ECF No. 8. On August 30, 2023, District Judge Kimberly J. Mueller issued an order explaining that corporations cannot appear without an attorney, and that it was unclear whether Synergy is a corporation or a sole proprietorship. ECF No. 10. The parties were ordered to submit a joint statement regarding the status of Synergy as an entity, and if Synergy was a separate business entity, to submit a date by which Synergy must obtain counsel. Id. at 2. Judge Mueller cautioned that "[f]ailure to obtain counsel as a corporate entity may subject Synergy to the entry of default and default judgment against it." Id. The status report was filed, clarifying that Synergy is a California corporation, incorporated on April 20, 2010, and suspended as of November 1, 2017. ECF No. 12 at 1-2. Judge Mueller granted Berner an extension of time until March 15, 2024 to retain counsel for Synergy. ECF No. 16.

On April 11, 2024, a second joint status report was filed indicating that Synergy did not intend to appear. ECF No. 17 at 4. Judge Mueller issued an order directing Atlas to request entry of default against Synergy within 14 days and move for default judgment against Synergy within 21 days thereafter. ECF No. 18. Atlas requested default and default was entered against Synergy on May 7, 2024. ECF Nos. 19, 20. Atlas did not timely more for default judgment. A year

passed, and on May 13, 2025 Judge Mueller issued an Order to Show Cause within 21 days why the failure to move for default judgment should not result in dismissal of this case for failure to prosecute. ECF No. 21. Atlas filed the instant motion for default judgment on June 3, 2025. ECF No. 22. The motion was set for hearing on the papers July 16, 2025. ECF No. 23.

## II.    Motion

Plaintiff moves for default judgment against Synergy only, on all counts, in the amount of $706,253.25. ECF No. 22 at 6.

## III.    Analysis

### A.  Legal Standard

Pursuant to Federal Rule of Civil Procedure 55, default may be entered against a party against whom a judgment for affirmative relief is sought who fails to plead or otherwise defend against the action. See Fed. R. Civ. P. 55(a). However, "[a] defendant's default does not automatically entitle the plaintiff to a court-ordered judgment." PepsiCo, Inc. v. Cal. Sec. Cans, 238 F.Supp.2d 1172, 1174 (C.D. Cal. 2002) (citing Draper v. Coombs, 792 F.2d 915, 924-25 (9th Cir. 1986)); see Fed. R. Civ. P. 55(b) (governing the entry of default judgments). Instead, the decision to grant or deny an application for default judgment lies within the district court's sound discretion. Aldabe v. Aldabe, 616 F.2d 1089, 1092 (9th Cir. 1980). In making this determination, the court may consider the following factors:

> the possibility of prejudice to the plaintiff; (2) the merits of plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

Eitel v. McCool, 782 F.2d 1470, 1471-72 (9th Cir. 1986). Default judgments are ordinarily disfavored. Id. at 1472.

Once default is entered, well-pleaded factual allegations in the operative complaint are taken as true, except for those allegations relating to damages. TeleVideo Sys., Inc. v. Heidenthal, 826 F.2d 915, 917-18 (9th Cir. 1987) (per curiam) (citing Geddes v. United Fin.

1   Group, 559 F.2d 557, 560 (9th Cir. 1977) (per curiam)); see also Fair Housing of Marin v.

2   Combs, 285 F.3d 899, 906 (9th Cir. 2002).  Although well-pleaded allegations in the complaint

3   are admitted by a defendant's failure to respond, "necessary facts not contained in the pleadings,

4   and claims which are legally insufficient, are not established by default."  Cripps v. Life Ins. Co.

5   of N. Am., 980 F.2d 1261, 1267 (9th Cir. 1992) (citing Danning v. Lavine, 572 F.2d 1386, 1388

6   (9th Cir. 1978)); accord DIRECTV, Inc. v. Huynh, 503 F.3d 847, 854 (9th Cir. 2007) ("[A]

7   defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law")

8   (citation and quotation marks omitted); Abney v. Alameida, 334 F.Supp.2d 1221, 1235 (S.D. Cal.

9   2004) ("[A] default judgment may not be entered on a legally insufficient claim.").  A party's

10  default conclusively establishes that party's liability, although it does not establish the amount of

11  damages.  Geddes, 559 F.2d at 560; cf. Adriana Int'l Corp. v. Thoeren, 913 F.2d 1406, 1414 (9th

12  Cir. 1990) (stating in the context of a default entered pursuant to Federal Rule of Civil Procedure

13  37 that the default conclusively established the liability of the defaulting party).

14      B.  The Eitel Factors

15          1.  Factor One: Possibility of Prejudice to Plaintiff

16      The first Eitel factor considers whether the plaintiff would suffer prejudice if default

17  judgment is not entered, and such potential prejudice to the plaintiff weighs in favor of granting a

18  default judgment.  See PepsiCo, Inc., 238 F.Supp.2d at 1177.  Here, plaintiff would suffer

19  prejudice if the court did not enter a default judgment because it would be without recourse for

20  recovery.  Accordingly, the first Eitel factor favors the entry of default judgment.

21          2.  Factors Two and Three: Merits of Claims and Sufficiency of Complaint

22      The merits of plaintiff's substantive claims and the sufficiency of the complaint are

23  considered here together because of the relatedness of the two inquiries.  The court must consider

24  whether the allegations in the complaint are sufficient to state a claim that supports the relief

25  sought.  See Danning, 572 F.2d at 1388; PepsiCo, Inc., 238 F.Supp.2d at 1175.  Here, the merits

26  of the claims and sufficiency of the complaint favor entry of default judgment.

27      Plaintiff brings two causes of action against Synergy: Breach of Duty of Loyalty under

28  California Civil Code § 343, and Conversion under Cal. Civ. Code § 3336.  Id. at 4-5.  Because

the court finds plaintiff has established the conversion claim, it does not address the duty of loyalty claim.

"Conversion is the wrongful exercise of dominion over the property of another. The elements of a conversion claim are: (1) the plaintiff's ownership or right to possession of the property; (2) the defendant's conversion by a wrongful act or disposition of property rights; and (3) damages. Conversion is a strict liability tort. The foundation of the action rests neither in the knowledge nor the intent of the defendant. Instead, the tort consists in the breach of an absolute duty; the act of conversion itself is tortious. Therefore, questions of the defendant's good faith, lack of knowledge, and motive are ordinarily immaterial." Greif v. Sanin, 74 Cal. App. 5th 412, 449 (2022), quoting Burlesci v. Petersen, 68 Cal.App.4th 1062, 1066 (1998). Plaintiff alleges that Synergy took possession of plaintiff's misappropriated funds. ECF No. 1 at 5. Plaintiff submitted a declaration by its current manager Doug Ozolins stating that Synergy misappropriated $706,243.25 of Atlas's funds, and that Atlas was accordingly damaged in that amount. ECF No. 22-1 at 4. Because plaintiff adequately states a claim for conversion, the court finds that the merits of the case favor entry of default judgment against Synergy.

### 3. Factor Four: The Sum of Money at Stake in the Action

Under the fourth Eitel factor, the court considers the amount of money at stake in relation to the seriousness of defendant's conduct. Here, plaintiff filed a declaration and exhibit showing that Synergy wrongfully converted $706,243.25 of its funds. ECF No. 22 -1 at 4-16. Plaintiff seeks that amount in damages. ECF No. 22 at 2. The amount at issue is proportionate to the seriousness of defendant's conduct and this factor favors entry of default judgment.

### 4. Factor Five: Possibility of Dispute Concerning Material Facts

The facts of this case are relatively straightforward, and plaintiff has provided the court with well-pleaded allegations supporting its claims. The court may assume the truth of well-pleaded facts in the complaint (except as to damages) following the clerk's entry of default and, thus, there is no likelihood that any genuine issue of material fact exists. See, e.g., Elektra Entm't Group Inc. v. Crawford, 226 F.R.D. 388, 393 (C.D. Cal. 2005) ("Because all allegations in a well-pleaded complaint are taken as true after the court clerk enters default judgment, there is no

likelihood that any genuine issue of material fact exists."); accord Philip Morris USA, Inc., 219 F.R.D. at 500; PepsiCo, Inc., 238 F.Supp.2d at 1177.  This factor favors entry of default judgment.

          5.    Factor Six: Whether Default Was Due to Excusable Neglect

Upon review of the record before the court, there is no indication that the default was the result of excusable neglect.  See PepsiCo, Inc., 238 F.Supp.2d at 1177.  Indeed, Synergy was given an opportunity to appear through counsel, and Berner—with full knowledge that Synergy would face default judgment if it did not appear through counsel—affirmatively stated to the court that Synergy did not intend to appear.  ECF No. 17 at 4.  Thus, the record supports a conclusion that Synergy has chosen not to defend this action, and not that the default resulted from any excusable neglect.  Accordingly, this Eitel factor favors the entry of a default judgment.

          6.    Factor Seven: Policy Favoring Decisions on the Merits

"Cases should be decided upon their merits whenever reasonably possible."  Eitel, 782 F.2d at 1472.  However, district courts have concluded with regularity that this policy, standing alone, is not dispositive, especially where a defendant fails to appear or defend itself in an action.  PepsiCo, Inc., 238 F.Supp.2d at 1177; see also Craigslist, Inc. v. Naturemarket, Inc., 694 F.Supp.2d 1039, 1061 (N.D. Cal. Mar. 5, 2010).  Accordingly, although the court is cognizant of the policy favoring decisions on the merits – and consistent with existing policy would prefer that this case be resolved on the merits – that policy does not, by itself, preclude the entry of default judgment.

          7.    Conclusion: Propriety of Default Judgment

Upon consideration of all the Eitel factors, the court concludes that plaintiff is entitled to the entry of default judgment against defendant.  What remains is the determination of the terms of judgment.

   C.    Terms of Judgment

Plaintiff seeks damages in the amount converted by Synergy:  $706,243.25.  This amount is supported by declaration and is directly proportionate to defendant's conduct.  Accordingly, the undersigned finds damages in the amount of $706,243.25 appropriate.

## IV. Conclusion

It is RECOMMENDED THAT:

1. Plaintiff's June 3, 2025 motion for default judgment (ECF No. 22) be granted; and

2. Judgment be entered against defendant Synergy in the amount of $706,243.25.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). Within twenty one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Id.; see also Local Rule 304(b). Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the objections shall be filed with the court and served on all parties within fourteen days after service of the objections. Local Rule 304(d). Failure to file objections within the specified time may waive the right to appeal the District Court's order. Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153, 1156-57 (9th Cir. 1991).

DATED: July 17, 2025

_Allison Claire_
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE